Case No. *17-3634*
*District Case No. 1-13-cr-00259-001*



In The United States Court of Appeals

For The Third Circuit

---

United States of America,

Appellee,

vs.

Daniel Thomas Curran,

Appellant

---

On Appeal from the denial of Appellant's Fed. R. Civ. Pro. Rule 59(e) Motion by the United States District Court-Middle District of Pennsylvania, in Case No. 1:13-CR-259.

---

Daniel Thomas Curran #71815-067

USP-Tucson

P.O. Box 24550

Tucson, AZ. 85734

Appellant Pro-Se

<u>Questions Presented</u>

1). Did the district court abuse its discretion in denying Appellant's claim of ineffective assistance of counsel in the suppression hearing, without holding an evidentiary hearing based on an actual conflict in a case or controversy?

2). Did the district court abuse its discretion in denying Appellant's claim of double jeopardy for receipt and possession of child pornography?

<u>Argument</u>

1). Appellant avers that the district court abused it's discretion by not having an evidentiary hearing as to the claim of ineffective assistance of counsel claim as to the suppression hearing, which Appellant had not clearly clarified as an attorney would have, showing the lack of federal jurisdiction as to the alleged federal charges, which was Appellant's argument of not being allowed enough time to articulate his argument of illegal seizure by the federal government.

Special Agent Heather Thew of the FBI, knowingly and intentionally lied in the Federal Search Warrant Application in Case No. 13-MC-575 filed on 12-16-2013, as to the 2002 Chev. Blazer, and Storage Unit B181 at 2611 E. Market St. York, PA. in a "Search" to seize items that had already been searched and seized by the York County Regional Police Dept. on Sept. 17, 2013 as to the aforementioned storage unit, and

items seized therein.

The "silver platter doctrine" of <u>Elkins v. United States</u> 364 U.S. 206 forbids such illegal activities on the behalf of the S.A. Thew, and all the "acquired" evidence based on an application for a search warrant based upon already removed evidence by the York County P.D. violates <u>Kremen v. United States</u> 353 U.S. 346; and <u>Lustig v. United States</u> 338 U.S. 74.

S.A. Thew knew there was no more alleged "child pornography" at the storage unit, and that the 2002 Chev. Blazer had already been seized and searched as well. There was <u>no</u> evidence of a federal crime found by S.A. Thew at storage unit B181, or in the 2002 Chev. Blazer, so had Appellant been allowed to properly articulate his claim at the Suppression Hearing, with more time allowed, then he would not be illegally detained in Federal Prison.

An evidentiary hearing is required due to the violation of Appellants substantial rights as to the Suppression Hearing, and the ineffective assistance of counsel claim, for counsels performance in not realizing the Federal Search Warrant obtained <u>nothing</u> from storage unit B181, or the 2002 Chev. Blazer, falls below the professional norm, and it allowed a violation of Appellants substantial rights. (See, attached state and federal search warrants).

2). Appellant avers that double jeopardy did attach when he was found guilty of both receipt <u>and</u> possession of child pornography. One can either receive, or possess child pornography, for in order to possess child pornography, one has to receive it first.

<u>United States v. Felton</u> 753 F.2d 276 (3rd Cir.) sets the precedent in this Circuit as to multiple charged offenses reaching double jeopardy, which are the same in law <u>and</u> fact. Appellant avers that he can either receive a package of drugs, or possess drugs from that package, he <u>cannot</u> both receive and posses the same drugs as it reaches double jeopardy. It is <u>exactly</u> the same point in the issue at hand.

Appellants substantial rights were violated by the district court as to this issue.

### In Conclusion

Appellant avers that but for the ineffective assistance of counsel at the suppression hearing and not allowing Appellant time to speak comprehensively as to the illegality of the alleged "Federal Search Warrant", Appellant <u>would not</u> be in Federal custody, as there is no way to overcome the illegal search and seizure done by S.A. Thew, who outright lied in her search warrant application to bring in evidence <u>not</u> gathered by S.A. Thew or <u>any</u> Federal agent, under an illegal search warrant is a clear and present constitutional violation of Appellants substantial rights, and an evidentiary hearing is required in the instant matter as to this issue of ineffective assistance of counsel and the lack of sceinter for Federal jurisdiction, due to a federal agent openly lying on a federal search warrant application.

Double jeopardy did also then and there attach under <u>Felton</u>, because of the receipt <u>and</u> possession issue stemming from the same transaction.

Appellant request a remand for an evidentiary hearing on these two (2) issues.

Submitted this 18 day of _December_ , 2017.\

Daniel T. Curran III

Daniel Thomas Curran #71815-067

USP-Tucson

P.O. Box 24550

Tucson, AZ. 85734

## Certificate of Service

Under penalty of perjury, a copy of the foregoing was placed into the prison mailing system, prepaid 1st class postage to:

AUSA Meredith Taylor

228 Walnut St. Rm. 220

Harrisburg, PA. 17101

On this _18_ day of _December_ , 2017.

Daniel Curran

- OR -

United States Court of Apeals  C/o James King
21400 United States Courthouse
601 Market Street
Philadelphia, PA  19106-1790

| Commonwealth of Pennsylvania | APPLICATION FOR |
| --- | --- |
| | **SEARCH WARRANT** |
| **COUNTY OF** YORK | AND AUTHORIZATION |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
| --- | --- | --- |

| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |
| --- | --- | --- | --- |
| DET MARK BAKER | NORTHERN YORK COUNTY REGIONAL PD | (717)292-3647 | 10/04/2013 |

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible) :

Images, videos of the victim's in this case; images or videos of child pornography; usage information

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.) : Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits. 204 PA §§ 213.1 - 213.7.

Miniature video camera and contained media

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):

Daniel Curran

| VIOLATION OF (Describe conduct or specify statute) : | DATE(S) OF VIOLATION: |
| --- | --- |
| Sexual Abuse of Children, T18 PA CSA 6312D | 9-24-13 |

[ ] **Warrant Application Approved by District Attorney - DA File No.** (if DA approval required pre Pa.R.Crim.P. 201(1) with assigned File No. per Pa.R.Crim.P. 507)

[ ] **Additional Pages Attached (Other than Affidavit of Probable Cause)**

[X] **Probable Cause Affidavit(s) MUST be attached (unless sealed below)** Total number of pages: ___4___

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED.

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure and is located at the particular premises or in the possession of the particular person as described above.

Signature of Affiant    NY CRPD    12    Badge Number
Agency or Address if private Affiant

Sworn to and subscribed before me this 04 day of Oct 2013    Mag. Dist. No. 19203

Kent LAlbright 390 E Berlin Rd York PA 17408    (SEAL)
Signature of Issuing Authority    Office Address

**SEARCH WARRANT**
TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

[X] This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than

[ ] This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than

10 P. M. o'clock Oct 44 2013

* The issuing authority should specify a date no later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this 4th day of Oct 2013 at 430 P. M. o'clock

Kent LAlbright 19203    Jan, 4 2018    (SEAL)
Signature of Issuing Authority    Mag. Dist. or Judicial Dist. No.    Date Commission Expires

Title of Issuing Authority: [X] Magisterial District Judge [ ] Common Pleas Judge [ ] _____

[ ] For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)

_____ (Date) (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge)

TO BE COMPLETED BY THE ISSUING AUTHORITY

AOPC 410A-10

A-1

**Commonwealth of Pennsylvania**

**COUNTY OF** YORK



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits. 204 PA §§ 213.1 - 213.7.

1. On 09/24/2013, 0200 hours, The Northern York County Regional Police Dept. responded to 3558 Liverpool Turnpike, Manchester Township, York County, to meet with Rex Schmidt.

2. Schmidt lives at the residence with his children, 9 year old C.S. and daughter, unknown name and DOB.

3. Schmidt also has a roommate, Daniel T. Curran, DOB-07/12/1973, who has lived with him the last two months.

4. Schmidt advised Curran has attempted to put listening devices inside the residence for unknown reasons.

5. Schmidt told him that was not ok to do.

6. On 09/24/2013, Schmidt and Curran were watching a football game on TV.

7. Curran said he was going to bed and left the room.

8. Schmidt left the room a short time later to check on his children.

9. Schmidt advised he went to check on C.S. and he was not in his bedroom.

10. Schmidt advised he checked around and located C.S. in Curran's bedroom on his bed without a shirt on.

11. Schmidt and Curran got into a verbal argument and Curran took his personal belongings and left.

12. C.S. advised nothing occurred between Curran and himself.

13. Schmidt was advised by the officer on scene to have C.S. taken to the hospital for a SAFE exam if he believed he may have been assaulted Curran.

14. Schmidt did not believe anything occurred between C.S. and Curran at that point.

15. On 09/24/2013. at approximately 1030 hours, Detective Michael Hine was contacted by Ofc. Lance Krout with West Manchester Township PD.

16. Ofc. Krout advised he was in the midst of taking a report from Charles Hamme at the West Manchester Mall that involved Daniel Curran.

17. Hine responded to the mall to speak with Hamme in person.

18. Hamme advised he works at the mall and arrived there early, 0600 hours, like he normally does and was approached by Curran.

19. Hamme advised Curran was his roommate about six months ago.

20. He stated Curran lived with him for a month and a half before he had him move out because he was not on the lease.

21. Curran started telling Hamme about the incident involving Schmidt.

22. Curran told Hamme that he has been having sex with C.S. and Schmidt's daughter for the past several weeks.

23. Curran advised C.S. was in his room last night and Schmidt almost caught them having sex.

24. Curran advised Schmidt came looking for C.S. when he was in his bed.

25. Curran told C.S. to hide under the pile of clothes before Schmidt came in

(Continued)

*I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.*

| Affiant Signature | Date 10/4/13 | Issuing Authority Signature | Date 10/4/13 | (SEAL) |
|---|---|---|---|---|

**Page   2   of   4   Pages**

AOPC 410B-10

A-2

CURRAN 000000179

| Commonwealth of Pennsylvania |  | AFFIDAVIT OF |
|---|---|---|
| COUNTY OF YORK | | PROBABLE CAUSE |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA §§ 213.1 - 213.7

the room.

26. Schmidt was led out of the room by Curran so he would not find C.S. in his bed.

27. Schmidt came back to the room where he found C.S. on the bed hiding under the clothes without a shirt on.

28. Curran stated that C.S. is his obsession and he prefers having sex with him over the girl.

29. Curran pulled out his cell phone and showed Hamme four different pictures.

30. Curran told Hamme they were pictures of C.S. and the daughter.

31. One picture was a naked boy taken of his butt, that Curran stated was C.S.

32. Another picture was of a little girl with her legs spread wide open, Curran stated was Schmidt's daughter.

33. Curran showed Hamme two more pictures of "butt holes" that were of the boy and girl.

34. Curran was comparing the size of the butt holes to Hamme.

35. Hamme was unsure why Curran would show him the pictures and divulge that information to him.

36. Hamme contacted the police once Curran was gone and left the mall.

37. On 09/25/2013, Hine applied for a search warrant for Daniel Curran's phone.

38. The search warrant was granted by Judge Bria.

39. On the same date, Hine returned to HQ to follow up with the investigation to locate Curran.

40. Hine was advised that Curran had sent an e-mail to our department tip line.

41. Curran completed the report and it was received on 09/25/2013.

42. Curran allegedly had audio/video of Rex Schmidt in C.S.'s room.

43. On 09/25/2013 at approximately 1100 hours Hine contacted Daniel Curran via phone conversation on his cell phone.

44. Curran asked if Hine was contacting him in regards to the web tip he sent in.

45. Hine advised him I was.

46. He stated he had video he would like to give to me in regards to Schmidt.

47. Hine told Curran he could meet him somewhere and he asked for his location.

48. Curran said he was currently near the Big Lots parking lot on White Street.

49. Hine knew from previous reports that Curran operated a white Chevrolet Blazer.

50. Hine asked Curran if he would be in his vehicle.

51. He stated he would just like to meet me some place other than near his vehicle.

52. Hine asked why he did not want to meet at his vehicle.

53. Curran stated he would just rather meet in the front of the store.

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | 10/4/13 Date | Issuing Authority Signature | 10/4/13 Date | (SEAL) |
|---|---|---|---|---|

Page   3   of   4   Pages

CURRAN 000000180

A-3



**Commonwealth of Pennsylvania**

**COUNTY OF** YORK

**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA §§ 213.1 - 213.7.

54. Hine advised him he could meet him in about 15 minutes.

55. Hine drove to the Big Lots parking lot and located a white Chevrolet Blazer bearing PA registration #YHX-0940 and parked directly beside it.

56. Curran was standing in front of the store and rushed over to Hine's location and questioned why he parked by his vehicle.

57. Hine advised him because it's a parking lot and he needed to park somewhere.

58. Curran proceeded to tell me about the video he had.

59. He pulled out a small plastic case containing a micro SD card and adapter.

60. In addition, Curran provided Detective Hine with a small concealable camera and stated it was the one that had the video.

61. He explained what was on the tape.

62. He said he had a video recorder in C.S.'s room.

63. Hine asked why would he put a video recorder in the child's room.

64. Curran stated he was concerned for C.S.'s welfare because he was afraid of R. Schmidt.

65. Curran continued to say that he gave C.S. an alarm clock for his bedroom that also had a video camera inside it.

66. Based upon the above information, your affiant requests a search warrant be issued to conduct a forensic analysis on the video camera and any contained storage.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | 10/4/13 | Issuing Authority Signature | 10/4/13 | (SEAL) |
|---|---|---|---|---|
| | Date | | Date | |

**Page   4   of   4   Pages**

AOPC 410B-10

CURRAN 000000181

A-4

Exhibit B

| **Commonwealth of Pennsylvania** | | **APPLICATION FOR** |
| **COUNTY OF** YORK | | **SEARCH WARRANT** |
| | | **AND AUTHORIZATION** |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
| OFFICER MICHAEL HINE | NORTHERN YORK COUNTY REGIONAL POLICE | (717) 292-3647 | 9/26/13 |
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible) :
White 2002 Chevrolet Blazer bearing PA registration #JHX-0940

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA §§ 213.1 - 213.7.
Interior of white Chevrolet Blazer bearing PA registration #JHX-0940

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):
Daniel Thomas Curran

VIOLATION OF (Describe conduct or specify statute) :
Pa.C.S.A. 3921(a) Theft by unlawful taking

DATE(S) OF VIOLATION:
July 1, 2013 through September

- [ ] **Warrant Application Approved by District Attorney - DA File No.**
  (if DA approval required pre Pa.R.Crim.P. 201(1) with assigned File No. per Pa.R.Crim.P. 507)
- [ ] **Additional Pages Attached (Other than Affidavit of Probable Cause)**
- [x] **Probable Cause Affidavit(s) MUST be attached (unless sealed below)** Total number of pages: **6**

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED
The below named Affiant, being duly sworn (or affirmed) before the issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

Signature of Affiant    Agency or Address if private Affiant    Badge Number    108

Sworn to and subscribed before me this 26th day of September 2013    Mag. Dist. No. 19-2

Signature of Issuing Authority    3203 Farmtrail Road, York, PA 17406    Office Address

**SEARCH WARRANT**
**TO LAW ENFORCEMENT OFFICER:**

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

- [ ] This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than
- [x] This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than *

2:20 P.M. o'clock September 28, 2013.

* The Issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
‡ If the Issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this 26th day of September, 2013 at 2:20 P.M. o'clock

Signature of Issuing Authority    19-2-04    Mag. Dist. or Judicial Dist. No.    Date Commission Expires

Title of Issuing Authority: [x] Magisterial District Judge [ ] Common Pleas Judge [ ] Senior Magisterial District J…

- [ ] For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)

_____ (Date)    (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge)

AOPC 410A-10

CURRAN 000000167

B-1

| **Commonwealth of Pennsylvania**  | **AFFIDAVIT OF PROBABLE CAUSE** |
|---|---|
| **COUNTY OF** YORK | |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA 213(A) - 213(C)

On 09/24/2013, 0200 hours, The Northern York County Regional Police Dept.
responded to 3558 Liverpool Turnpike, Manchester Township, York County, to meet
with ▮▮▮▮▮. ▮▮▮▮ lives at the residence with his children, 9 year old
C.S. and daughter, unknown name and DOB. ▮▮▮▮ also has a roommate, Daniel
T. Curran, ▮▮▮▮▮▮, who has lived with him the last two months. ▮▮▮▮
advised Curran has attempted to put listening devices inside the residence for
unknown reasons. ▮▮▮▮ told him that was not ok to do.
On 09/24/2013, ▮▮▮▮ and Curran were watching a football game on TV.
Curran said he was going to bed and left the room. ▮▮▮▮ left the room a
short time later to check on his children. ▮▮▮▮ advised he went to check on
C.S. and he was not in his bedroom. ▮▮▮▮ advised he checked around and
located C.S. in Curran's bedroom on his bed without a shirt on. ▮▮▮▮ and
Curran got into a verbal argument and Curran took his personal belongings and
left. C.S. advised nothing occurred between Curran and himself.
▮▮▮▮ was advised by the officer on scene to have C.S. taken to the
hospital for a SAFE exam if he believed he may have been assaulted Curran.
▮▮▮▮ did not believe anything occurred between C.S. and Curran at that
point.
On 09/24/2013. at approximately 1030 hours, I was contacted by Ofc. Lance
Krout with West Manchester Township PD. Ofc. Krout advised he was in the midst
of taking a report from Charles Hamme at the West Manchester Mall that involved
Daniel Curran.
I responded to the mall to speak with Hamme in person. Hamme advised he
works at the mall and arrived there early, 0600 hours, like he normally does.
He advised he was approached by Curran. Hamme advised Curran was his roommate
about six months ago. He stated Curran lived with him for a month and a half
before he had him move out because he was not on the lease. Curran started
telling Hamme about the incident involving ▮▮▮▮. Curran told Hamme that he
has been having sex with C.S. and ▮▮▮▮ daughter for the past several
weeks. Curran advised C.S. was in his room last night and ▮▮▮▮ almost
caught them having sex. Curran advised ▮▮▮▮ came looking for C.S. when he
was in his bed. Curran told C.S. to hide under the pile of clothes before
▮▮▮▮ came in the room. ▮▮▮▮ was led out of the room by Curran so he
would not find C.S. in his bed. ▮▮▮▮ came back to the room where he found
C.S. on the bed hiding under the clothes without a shirt on. Curran stated
that C.S. is his obsession and he prefers having sex with him over the girl.
Curran pulled out his cell phone and showed Hamme four different pictures.
Curran told Hamme they were pictures of C.S. and the daughter. One picture was
a naked boy taken of his butt, that Curran stated was C.S. Another picture
was of a little girl with her legs spread wide open. Curran stated was

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| _____108_____ | _9/26/13_ | _Margaret L. Brea_ 9/26/13 |
|---|---|---|
| Affiant Signature | Date | Issuing Authority Signature       Date |

Page 2 of 6 Pages

CURRAN 000000168

Commonwealth of Pennsylvania  **AFFIDAVIT OF PROBABLE CAUSE**

**COUNTY OF** YORK

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA SII 211.1 - 211.9

[ ] daughter. Curran showed Hamme two more pictures of "butt holes" that were of the boy and girl. Curran was comparing the size of the butt holes to Hamme.

Hamme was unsure why Curran would show him the pictures and divulge that information to him. Hamme contacted the police once Curran was gone and left the mall.

On 09/25/2013, I applied for a search warrant for Daniel Curran's phone. The search warrant was granted by Judge Bria.

On the same date, I returned to HQ to follow up with the investigation to locate Curran. I was advised that Curran had sent an e-mail to our department tip line. Curran completed the report and it was received on 09/25/2013. Curran allegedly had audio/video of [ ] in C.S.'s room.

On 09/25/2013 at approximately 1100 hours I contacted Daniel Curran via phone conversation on his cell phone. Curran asked if I was contacting him in regards to the web tip he sent in. I advised him I was. He stated he had video he would like to give to me in regards to [ ]. I told Curran I could meet him somewhere and I asked for his location. He said he was currently near the Big Lots parking lot on White Street. I knew from previous reports that Curran operated a white Chevrolet Blazer. I asked Curran if he would be in his vehicle. He stated he would just like to meet me some place other than near his vehicle. I asked why he did not want to meet at his vehicle. He stated he would just rather meet in the front of the store. I advised him I could meet him in about 15 minutes. I drove to the Big Lots parking lot and located a white Chevrolet Blazer bearing PA registration #YHX-0940 and parked directly beside it. Curran was standing in front of the store and rushed over to my location and questioned why I parked by his vehicle. I told him because it's a parking lot and I needed to park somewhere. Curran proceeded to tell me about the video he had. He pulled out a small plastic case containing a micro SD card and adaptor. He explained what was on the tape. He said he had a video recorder in C.S.'s room. I asked why would he put a video recorder in the child's room. Curran stated he was concerned for C.S.'s welfare because he was afraid of R. [ ] Curran continued to say that he gave C.S. an alarm clock for his bedroom that also had a video camera inside it. R. [ ] found the video camera in the clock and gave the clock back to Curran. While speaking with Curran the search warrant for his cell phone was served on him.

On 09/25/2013, I spoke with Rex [ ] in person at the West Manchester mall. [ ] advised of the issues he has been having with Curran since he moved in about three months ago. Since Curran has moved out, [ ] has located several items missing from the house. [ ] advised he found several items of C.S.'s missing. Items like his personal belongings; necklace,

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/26/13 | Issuing Authority Signature *Margaret L. Bria* | Date 9/26 |

108

Page 3 of 6 Pages

AOPC 410B-10

CURRAN 000000169

B-3

| Commonwealth of Pennsylvania | | AFFIDAVIT OF |
|---|---|---|
| COUNTY OF YORK | | PROBABLE CAUSE |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g. PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA § 213.1 - 213.7.

bracelet, ring (items were given to C.S. by his mother) Also found missing were
C.S.'s Nintendo DS which has picture and video capability. ▇▇▇▇ recalled
one incident where Curran nailed the attic door and basement door shut.

▇▇▇▇ questioned Curran why he did that and Curran told him because he was
tired of always turning the lights off. ▇▇▇▇ told me he found several items
missing from the basement, including a box of photo albums, a collection of
knives, throwing stars, nunchuks, two bayonets, throwing stars, old bullets and
his old cellphone.

▇▇▇▇ believes Curran took these items because he was the only other
person inside the household. ▇▇▇▇ also advised Curran said he has a storage
shed somewhere, but does not know the exact location.

▇▇▇▇ stated he spoke with a security guard at the mall . Curran told
her that he had taken ▇▇▇▇ items and placed them in the attic. ▇▇▇▇
said he looked in the attic and did not locate the items.
I request a search warrant for Curran's vehicle in regards to this
incident.

CURRAN IS SELF-ADMITTEDLY LIVING OUT OF HIS VEHICLE. VEHICLE
WAS VERIFIED THROUGH PENNDOT AS REGISTERED TO CURRAN.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature 108 | Date 9/26/13 | Issuing Authority Signature Margaret L. Bean | Date 9/26/13 |
|---|---|---|---|

**Page 4 of 6 Pages**

AOPC 410B-10

CURRAN 000000170

| Commonwealth of Pennsylvania | | APPLICATION FOR SEARCH WARRANT CONTINUATION PAGES |
|---|---|---|
| COUNTY OF YORK | | |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**Continuation of:**

☐ Items to be searched and seized ☐ Description of premises/person(s) to be searched ☐ Owner/ Occupant ☒ Violations

(Violation Codes)

or disposition

AOPC 410C-98

CURRAN 000000171

B-5

| Commonwealth of Pennsylvania | | APPLICATION FOR SEARCH WARRANT CONTINUATION PAGES |
|---|---|---|
| COUNTY OF YORK | | |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|

**Continuation of:**

☐ Items to be searched and seized  ☐ Description of premises/person(s) to be searched  ☐ Owner/Occupant  ☒ Violations

**(Dates of Violations)**

24, 2013

Page  6  of  6  Pages

ACPC 410C-93

CURRAN 000000172

B-6

Exhibit D

| Commonwealth of Pennsylvania | | APPLICATION FOR |
|---|---|---|
| COUNTY OF YORK | | SEARCH WARRANT AND AUTHORIZATION |

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
|---|---|---|
| OFFICER MICHAEL HINE | NORTHERN YORK COUNTY REGIONAL POLICE | (717) 292-3647    9 27/13 |
| AFFIANT NAME | AGENCY | PHONE NUMBER    DATE OF APPLICATION |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):**
Personal belongings of ~~Rex Schmidt,~~ ▓▓▓▓▓▓ and ▓▓▓▓▓
including, but not limited to Nintendo DS, cell phone, pictures, photo album,
knives, throwing stars, bayonets, nunchuks, old bullets.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED** (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.) : Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits. 204 PA §§ 213.1 - 213.7.
Storage unit #B181 at Capital Self Storage, 2611 West Market Street, York PA

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give video and/or description):**
Daniel Thomas Curran ▓▓▓▓▓▓▓▓▓

| VIOLATION OF (Describe conduct or specify statute) : 18 Pa.C.S.A. 3921(a) | DATE(S) OF VIOLATION: 07/01/2013-09/24/2013 |
|---|---|

☐ **Warrant Application Approved by District Attorney - DA File No.** (If DA approval required per Pa R.Crim.P. 201(1) with assigned File No. per Pa R.Crim.P. 507)
☐ **Additional Pages Attached (Other than Affidavit of Probable Cause)**
☒ **Probable Cause Affidavit(s) MUST be attached (unless sealed below)** Total number of pages: __5__
TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED.

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure and is located at the particular premises or in the possession of the particular person as described above.    108

| Signature of Affiant | NYCRPD Agency or Address if private Affiant | Badge Number |
|---|---|---|

Sworn to and subscribed before me this _27th_ day of _September 2013_. Mag. Dist No. _19-2-04_.

_Margaret B. Brei_    3202 Farmtrail Road, York, PA 17406    (SEAL)
Signature of Issuing Authority    Office Address

**SEARCH WARRANT TO LAW ENFORCEMENT OFFICER:** WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☐ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later**
☒ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later*

_1:20 p.M. o'clock    September 29, 2013._

* The issuing authority should specify a date no later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this _27th_ day of _September 2013_ at _1:20 p_ M. o'clock.

_Margaret B. Brei_    19-2-04
Signature of Issuing Authority    Mag. Dist. or Judicial Dist No.    Date Commission Expires:

Title of Issuing Authority: ☒ Magisterial District Judge    ☐ Common Pleas Judge    ☐ Senior Magisterial District Judge

☐ For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)

_____ (Date)    (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge)

AOPC 110A-10

CURRAN 000000173

C-1

**Commonwealth of Pennsylvania**

**COUNTY OF** YORK

**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number (Issuing Authority): | Police Incident Number: 20130924M0006 | Warrant Control Number: |
| --- | --- | --- |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA §§ 213.1 - 213.7

On 09/24/2013, 0200 hours, The Northern York County Regional Police Dept. responded to 3558 Liverpool Turnpike, ▮▮▮▮▮▮ Township, York County, to meet with ▮▮▮▮▮▮▮ lives at the residence with his children, 9 year-old C.S. and daughter, unknown name and DOB. ▮▮▮▮▮▮ also has a roommate, Daniel T. Curran, ▮▮▮▮▮▮▮, who has lived with him the last two months. ▮▮▮▮ advised Curran has attempted to put listening devices inside the residence for unknown reasons. ▮▮▮▮▮ told him that was not ok to do.

On 09/24/2013, ▮▮▮▮▮ and Curran were watching a football game on TV. Curran said he was going to bed and left the room. ▮▮▮▮ left the room a short time later to check on his children. ▮▮▮▮ advised he went to check on C.S. and he was not in his bedroom. ▮▮▮▮▮ advised he checked around and located C.S. in Curran's bedroom on his bed without a shirt on. ▮▮▮ and Curran got into a verbal argument and Curran took his personal belongings and left. C.S. advised nothing occurred between Curran and himself. ▮▮▮▮ was advised by the officer on scene to have C.S. taken to the hospital for a SAFE exam if he believed he may have been assaulted Curran. ▮▮▮▮▮ did not believe anything occurred between C.S. and Curran at that point.

On 09/24/2013, at approximately 1030 hours, I was contacted by Ofc. Lance Krout with West Manchester Township PD. Ofc. Krout advised he was in the midst of taking a report from Charles Hamme at the West Manchester Mall that involved Daniel Curran.

I responded to the mall to speak with Hamme in person. Hamme advised he works at the mall and arrived there early, 0600 hours, like he normally does. He advised he was approached by Curran. Hamme advised Curran was his roommate about six months ago. He stated Curran lived with him for a month and a half before he had him move out because he was not on the lease. Curran started telling Hamme about the incident involving Schmidt. Curran told Hamme that he has been having sex with C.S. and ▮▮▮▮▮ daughter for the past several weeks. Curran advised C.S. was in his room last night and ▮▮▮▮ almost caught them having sex. Curran advised ▮▮▮▮ came looking for C.S. when he was in his bed. Curran told C.S. to hide under the pile of clothes before ▮▮▮▮ came in the room. ▮▮▮ was led out of the room by Curran so he would not find C.S. in his bed. ▮▮▮▮ came back to the room where he found C.S. on the bed hiding under the clothes without a shirt on. Curran stated that C.S. is his obsession and he prefers having sex with him over the girl. Curran pulled out his cell phone and showed Hamme four different pictures. Curran told Hamme they were pictures of C.S. and the daughter. One picture was a naked boy taken of his butt, that Curran stated was C.S. Another picture was of a little girl with her legs spread wide open, Curran stated was

(CONTINUED)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/27/13 | Issuing Authority Signature | Date 9/27/13 |
| --- | --- | --- | --- |

Page 2 of 5 Pages

AOPC 410B-10

CURRAN 000000174

C-2

Commonwealth of Pennsylvania

**AFFIDAVIT OF PROBABLE CAUSE**

**COUNTY OF** YORK



| Docket Number (Issuing Authority): | Police Incident Number: 20130924MD006 | Warrant Control Number: |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA ST 213.1 - 213.2

daughter. Curran showed Hamme two more pictures of "butt holes" that
were of the boy and girl. Curran was comparing the size of the butt holes to
Hamme
Hamme was unsure why Curran would show him the pictures and divulge that
information to him. Hamme contacted the police once Curran was gone and left
the mall.
On 09/25/2013, I applied for a search warrant for Daniel Curran's phone.
The search warrant was granted by Judge Brin.
On the same date, I returned to HQ to follow up with the investigation to
locate Curran. I was advised that Curran had sent an e-mail to our department
tip line. Curran completed the report and it was received on 09/25/2013.
Curran allegedly had audio/video of Rex ▮▮▮▮▮ in C.S.'s room.
On 09/25/2013 at approximately 1100 hours I contacted Daniel Curran via
phone conversation on his cell phone. Curran asked if I was contacting him in
regards to the web tip he sent in. I advised him I was. He stated he had
video he would like to give to me in regards to ▮▮▮▮▮ I told Curran I could
meet him somewhere and I asked for his location. He said he was currently
near the Big Lots parking lot on White Street. I knew from previous reports
that Curran operated a white Chevrolet Blazer. I asked Curran if he would be
in his vehicle. He stated he would like to meet me some place other than
near his vehicle. I asked why he did not want to meet at his vehicle. He
stated he would just rather meet in the front of the store. I advised him I
could meet him in about 15 minutes. I drove to the Big Lots parking lot and
located a white Chevrolet Blazer bearing PA registration #YHX-0940 and parked
directly beside it. Curran was standing in front of the store and rushed over
to my location and questioned why I parked by his vehicle. I told him because
it's a parking lot and I needed to park somewhere. Curran proceeded to tell me
about the video he had: He pulled out a small plastic case containing a micro
SD card and adapter. He explained what was on the tape. He said he had a
video recorder in C.S.'s room. I asked why would he put a video recorder in
the child's room. Curran stated he was concerned for C.S.'s welfare because he
was afraid of R. ▮▮▮▮▮ Curran continued to say that he gave C.S. an alarm
clock for his bedroom that also had a video camera inside it. R. ▮▮▮▮▮ found
the video camera in the clock and gave the clock back to Curran. While
speaking with Curran the search warrant for his cell phone was served on him.
On 09/25/2013, I spoke with ▮▮▮▮▮ in person at the West Manchester
mall. ▮▮▮▮▮ advised of the issues he has been having with Curran since he
moved in about three months ago. Since Curran has moved out, ▮▮▮▮▮ has
located several items missing from the house. ▮▮▮▮▮ advised he found several
items of C.S.'s missing. Items like his personal belongings; necklace,

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 9/27/13 | Issuing Authority Signature | Date 9/27/13 (SEAL) |

Page  3  of  5  Pages

AOPC 410C-10

CURRAN 000000175

C-3

**Commonwealth of Pennsylvania**

**COUNTY OF** YORK

**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number (Issuing Authority): | Police Incident Number: | Warrant Control Number: |
|---|---|---|
| | 20130924M0006 | |

PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:
Social security numbers and financial information (e.g., PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
[204 PA (II 211.1, 213]

bracelet, ring (items were given to C.S. by his mother) Also found missing were
C.S.'s Nintendo DS which has picture and video capability. ▮▮▮▮ recalled
one incident where Curran nailed the attic door and basement door shut.
▮▮▮▮ questioned Curran why he did that and Curran told him because he was
tired of always turning the lights off. ▮▮▮▮ told me he found several items
missing from the basement, including a box of photo albums, a collection of
knives, throwing stars, nunchuks, two bayonets, throwing stars, old bullets and
his old cellphone.
▮▮▮▮ believes Curran took these items because he was the only other
person inside the household. ▮▮▮▮ also advised Curran said he has a storage
shed somewhere, but does not know the exact location.
▮▮▮▮ stated he spoke with a security guard at the mall . Curran told
her that he had taken ▮▮▮▮ items and placed them in the attic. ▮▮▮▮
said he looked in the attic and did not locate the items.
Daniel Curran is self-admittedly living out of his vehicle, a white
Chevrolet Blazer bearing PA registration WJHX-0940. I verified through PennDOT
records that the vehicle is, in fact, registered to Daniel Curran.
On 09/26/2013, I applied for a search warrant for Daniel Curran's vehicle
to locate items ▮▮▮▮ advised were missing from his residence. Judge Bria
signed the search warrant.
Curran advised that if I ever needed to find him to contact McNamara Auto
Sales because they have a GPS tracking system on his vehicle. On 09/27/2013 at
0810 hours I contacted McNamara Auto Sales and identified myself. I spoke with
Karen Velek at the business. I advised Velek I had a search warrant for
Curran's vehicle and needed assistance in locating it. Velek advised Curran's
vehicle was currently at Memory Lane and Industrial Highway at the McDonald's
lot. I responded to the McDonald's with the assistance of Detective Baker. I
found Curran's vehicle in the parking lot, with Curran being in the driver
seat. I pulled my vehicle next to Curran's vehicle. I exited my vehicle and
approached Curran. I advised Curran I had a search warrant for the vehicle.
He said he remembered me and asked if I was done with his cell phone that I had
previously seized. I explained that his cell phone was still being worked on.
Curran exited the vehicle and was detained by Det. Baker until his vehicle
was searched. I asked Curran if he had any of ▮▮▮▮ belongings in his
vehicle. He stated he did not. I specifically asked him if he had ▮▮▮▮'s
cell phone, knives, throwing stars, pictures or photo album. Curran stated he
had none of ▮▮▮▮s belongings. I checked the interior of the vehicle and
did not locate any of the items ▮▮▮▮ had listed as missing. I did locate a
paper tablet on Curran's front seat that had schematics of ▮▮▮▮'s house.
The picture included ▮▮▮▮ room and the diagram showed the other bedrooms.

(Continued)

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| | 108 | 9/27/13 | _Margaret J. Bria_ | 9/27/2013 (SEAL) |
|---|---|---|---|---|
| Affiant Signature | | Date | Issuing Authority Signature | Date |

Page 4 of 5 Pages

AOPC 410B-10

CURRAN 000000176

C-4



**Commonwealth of Pennsylvania**

**COUNTY OF** YORK

**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number: (Issuing Authority): | Police Incident Number: 20130924x0006 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**
Social security numbers and financial information (e.g.: PINs) should not be listed. If the identity of an account number must be established, use only the last 4 digits.
204 PA §§ 7201 - 7217

The picture had printed on it "28 cameras" that were located in the house.
Curran stated he was in the process of putting cameras inside the house to
catch ▮▮▮ with ▮▮▮▮. After searching Curran's vehicle, he was un-detained. I
asked Curran where his storage facility was located and he stated he no longer
had one. He said he had a storage unit in West York at Capital Self Storage
but he closed it out a month and a half ago. I asked him if he had a storage
unit in East York, because ▮▮▮▮▮ advised Curran had one in East York but did
not know the location. Curran stated he had no storage units whatsoever.
Curran stated all his belongings he has are in his vehicle. He stated he sold
everything from his storage unit in West York and closed it.
I advised Curran I would be in touch with him as the investigation
continues. I left the location and Det. Baker called Capital Self Storage in
West York to see if Curran ever had a unit there. Det. Baker spoke with the
clerk who advised Curran never had a storage unit at their location. Det.
Baker contacted Capital Self Storage in East York, 2611 East Market Street and
spoke with Missy Fuhrman, clerk. Fuhrman advised Curran does have a storage
unit there and Curran was currently at his storage unit. I responded with
Detective Baker to that location and found Curran walking out of the gate
entrance. Curran was looking back towards the fence area when I first
confronted him. I approached Curran and placed him into investigative
detention due to the possibility of destruction of evidence. I observed
Curran's vehicle to be in an adjacent parking lot near the storage facility.
There were several bags near the fence area Curran had previously been looking.
Curran stated the bags were his. I gave Curran miranda warnings at that
time. He stated the items were his and he threw them over the fence. He
stated he does have a storage facility at this business. When asked why he
lied to me about not having a storage facility, Curran gave no reason. Curran
was placed into the back of the patrol unit and I checked the items that were
in the field next to the fence. One bag was spilled open with several camera
film containers, a knife and child's toy laying in the grass. I opened a duffle
bag and found a cell phone inside. I asked Curran if the cell phone was
▮▮▮▮▮. He stated it was. The duffle bag, a blue hand bag and a large
rolling bag were seized as evidence. I transported Curran to YCJC Booking to
be arraigned on the theft charges.
I request a search warrant be issued for the contents inside Curran's
storage unit #B181 at Capital Self Storage, 2611 West Market Street, York.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| _108_ | _9/27/13_ | _Margaret B. Smith_ | _9/27/2013_ |
|---|---|---|---|
| Affiant Signature | Date | Issuing Authority Signature | Date |

Page    5    of    5    Pages

AOPC 411B-10

CURRAN 000000177

C-5

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2002 CHEVROLET BLAZER VIN<br>#1GNDT13W62K226069 and PA JHX040 and 2611 East<br>Market Street, Unit#B181, York, Pennsylvania, 17402 | )<br>)<br>)  Case No.  13-MC-575<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Middle _____ District of _____ Pennsylvania _____
*(identify the person or describe the property to be searched and give its location)*:
2002 CHEVROLET BLAZER VIN #1GNDT13W62K226069 and PA JHX040 and 2611 East Market Street, Unit#B181, York, Pennsylvania, 17402 - See Attachment A for a more detailed description

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ December 31, 2013 _____
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.      ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

_____ .
*(name)*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for ___30___ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  *12/16/13 @ 4:30p.m.*      *(signature)*
                                                                        *Judge's signature*

City and state:  Harrisburg, Pennsylvania      Susan E. Schwab, U. S. Magistrate Judge
                                                                                    *Printed name and title*

FA-1

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*

| Certification |
|---|

    *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

*Date:* _____

_____

*Executing officer's signature*

_____

*Printed name and title*

F A - 2

## ATTACHMENT A

1.    The CHEVROLET BLAZER is described as a white 2002 Chevrolet Blazer bearing VIN #1GNDT13W62K226069 and Pennsylvania plate JHX040.

2.    The CAPITAL SELF STORAGE is located at 2611 East Market Street, York, Pennsylvania, 17402.  Unit #B181 is a marked storage unit located within this facility.

## ATTACHMENT B

Below is a list of items to be searched and seized from the white 2002 Chevrolet Blazer bearing VIN #1GNDT13W62K226069 and Pennsylvania plate JHX040; and premises at CAPITAL SELF STORAGE, 2611 East Market Street, York, Pennsylvania, 17402, Unit #B181.

LIST OF ITEMS TO BE SEIZED

1.     All visual depictions of minors engaged in sexually explicit conduct produced using minors engaged in such conduct, on whatever medium (e.g. digital media, optical media, books, magazines, photographs, negatives, videotapes, CDs, DVDs, etc.), including those in opened or unopened e-mails and digital messages, and all metadata associated with any digital file. These include both originals and copies, and authorization is granted to remove such media without viewing them at the time and place of seizure, and to view them at a later time.

2.     All documents (in documentary or electronic form), including correspondence, records, e-mails, chat logs, and internet history, pertaining to the possession, receipt, access to or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography whether transmitted, possessed, or received.

3.     All communications, and data regarding communications, with potential minors involving sexual topics or an effort to seduce, defraud, or coerce the minor.

4.     All books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

5.     Documents and records regarding the ownership and/or possession of the searched vehicle or premises.

6.     All bills, payment records, and receipts to include credit card information.

7.     During the course of the search, photographs of the searched vehicle and premises may also be taken to record the condition thereof and/or the location of items therein.

8.     Any and all bodily fluids and tissues, hairs, fibers, fingerprints, soil, or other evidence that may be used to help identify individuals that have been present within the premises or vehicle, or have been in contact with items discovered at or seized from the premises or vehicle. Upon a determination that the removal or collection of trace evidence, and examination thereof, would be more appropriately made in a controlled environment, the item containing the trace evidence may be removed and examined at a laboratory location.

9.    Any and all "sex toys" including any items, tools, or toys, that may be used as a "sex toy" or restraint.

10.    Children's clothing, toys, accessories, or other items typically intended for use by a child.

11.    All computer and cellular telephone passwords or passcodes, keywords and other data security devices designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software, or other programming code. Any password or encryption key that may control access to a computer operating system, individual computer files, or other electronic data.

12.    Evidence of logs and files on a computer or storage device, such as those generated by the computer's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the computer at the time any visual depictions described in paragraph 1 and 3 were created, sent, received, or viewed.

13.    The following may be seized and searched for all items listed above, and for any items specifically noted in the paragraphs below:

    a.    Computer hardware, meaning any and all computer equipment. Included within the definition of computer hardware are any electronic devices capable of data processing (such as central processing units, laptop or notebook computers, personal digital assistants, gaming consoles, and wireless communication devices to include cellular telephone devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media); related communications devices (such as modems, cables and connections); storage media, defined below; and security devices, also defined below.

    b.    Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

    c.    Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

    d.    Data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption

FA 5

codes); and similar information that is required to access computer programs or date or to otherwise render programs or data into usable form.

e.    All storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed hard disks, external hard disks, removable hard disks (including micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, iPods, iPads, digital cameras, memory cards (e.g. CF or SD cards), Xboxes, flash drives, or other memory storage devices.

The above seizure of computer and computer related hardware relates to such computer-related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting. Upon a determination that such examination would be more appropriately made in a controlled environment, this storage media may be removed and examined at a laboratory location.